UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE STOUT,<br><br>    Plaintiff,<br><br>v.<br><br>GRUBHUB INC., et al.,<br><br>    Defendants. | Case No. 21-cv-04745-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Docket No. 28 |

Plaintiff Jesse Stout has brought suit as an individual, but (as stated in the caption) allegedly "on behalf of the general public," against Defendant Grubhub Inc. As alleged in the operative complaint, he "seeks public injunctive relief [to address] Grubhub's deceptive and untruthful advertising related to [its] promise to provide 'Unlimited Free Delivery' to Grubhub+ subscribers." FAC ¶ 1. Currently pending before the Court is Grubhub's motion to compel arbitration and stay proceedings. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Grubhub's motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

A.    FAC

In the operative first amended complaint ("FAC"), Mr. Stout alleges as follows.

> Grubhub markets its Grubhub+ monthly subscription service as a flat, low-cost way to receive 'Unlimited Free Delivery.' For $9.99/month, Grubhub promises users that if they sign up for Unlimited, they will receive "unlimited free delivery at your favorite restaurants' so long as the order size met a certain monetary minimum [$12+].

FAC ¶ 24.

However, Grubhub has undercut the promise of Unlimited Free Delivery by charging what is called a "CA Driver Benefits Fee." *See* FAC ¶ 30. Grubhub came up with this Fee after the passage of Proposition 22. Although Grubhub supported Proposition 22, it still "required Grubhub to pay for certain benefits and protections that it had not previously been covering." FAC ¶ 21. Accordingly, "in December 2020, one month after the passage of Proposition 22, Grubhub began charging a 'CA Driver Benefits Fee.' The CA Driver Benefits Fee is $2.50 and is added to all California orders." FAC ¶ 23. The Fee is essentially the equivalent of a delivery fee.

> Indeed, Grubhub does not charge this fee to orders placed through the app and picked up in store. As indicated by its name, the CA Driver Benefits Fee is used to pay drivers for the benefits they are afforded under Proposition 22. A fee that is tacked on to every order to compensate drivers in exchange for their delivery of food is, by definition, a delivery fee.

FAC ¶ 33.

"Plaintiff and other Grubhub+ subscribers are lured into signing up for a Grubhub+ subscription based on the promise of Unlimited Free Delivery. Grubhub fails to honor that promise, however, by adding a CA Driver Benefits Fee to every Grubhub order." FAC ¶ 8.

Based on, *inter alia*, the above allegations, Mr. Stout asserts the following claims for relief:

(1) Violation of California Business & Professions Law § 17200. As relief, Mr. Stout "seeks an order . . . enjoining [Grubhub] from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices" – "specifically," an order enjoining Grubhub from charging the CA Driver Benefits Fee on Grubhub+ subscribers. FAC ¶ 62.

(2) Violation of the California Consumer Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code § 1750. For this claim, Mr. Stout seeks the same injunctive relief as above. *See* FAC ¶ 70.

(3) Violation of California Business & Professions Law § 17500. For this claim, Mr. Stout again seeks injunctive relief but slightly different in nature – *i.e.*, an order

enjoining Grubhub "from continuing to engage, use, or employ [its] practice of misrepresenting [its] delivery fees." FAC ¶ 77.

In addition to the above, Mr. Stout seeks reasonable attorneys' fees and costs.[1] *See* FAC, Prayer for Relief ¶(c).

B.  Arbitration Agreement

In support of its motion to compel, Grubhub has submitted the Koreis declaration which provides evidence related to the arbitration agreement between the parties. The Koreis declaration reflects as follows.

When a customer creates an account with Grubhub (whether via the mobile app or the website), she is required to consent to its Terms of Use. *See* Koreis Decl. ¶ 4. In addition, each time a customer places an order (whether pick-up or delivery, and whether via the mobile app or the website), a customer must agree to the Terms of Use. *See* Koreis Decl. ¶ 5.

As reflected by the screenshots above related to the placing of an order, there was a version of the Terms of Use dated December 14, 2020. *See* Koreis Decl. ¶ 7. Mr. Stout placed several orders on Grubhub after December 14, 2020.[2] *See* Koreis Decl. ¶ 15 (also testifying that Mr. Stout has, in total, placed at least 29 orders using an account in his name). In addition, Grubhub customers were shown a pop-up box (both on the mobile app and on the website) that informed them of updated Terms of Use starting on December 14, 2020. *See* Koreis Decl. ¶ 8 & Exs. F-G (website and mobile app). Customers were also sent an email informing them of the updated Terms of Use. *See* Koreis Decl. ¶ 8 & Ex. H (email notice); *see also* Koreis Decl. ¶ 14 (testifying that Mr. Stout received notice of the December 2020 update by email). Thus, the Terms of Use dated December 14, 2020, apply.

---

[1] In his original complaint, Mr. Stout sought not only injunctive relief and attorneys' fees but also monetary restitution and compensatory and punitive damages. Moreover, the original complaint (which also included a claim for unjust enrichment) was brought as a class action. *See* Docket No. 1 (complaint). Grubhub moved to compel arbitration on the original complaint but the parties later stipulated that Mr. Stout would amend his complaint instead of responding to the motion. After Mr. Stout filed the FAC, Grubhub filed the pending motion to compel arbitration.

[2] It appears that Mr. Stout created a Grubhub account several months earlier, on September 23, 2020. *See* Koreis Decl. ¶ 13.

1    The December 2020 Terms of Use include the following provisions relevant to the
2    arbitration agreement:

- **Page 1, § I.** "IMPORTANT: PLEASE REVIEW THE 'DISPUTE RESOLUTION' SECTION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH GRUBHUB, NO MATTER WHEN ARISING OR ASSERTED, THROUGH BINDING AND INDIVIDUAL ARBITRATION. YOU ACKNOWLEDGE AND AGREE THAT YOU AND GRUBHUB EACH WAIVE THE RIGHT TO A TRIAL BY JURY.  YOU ALSO WAIVE YOUR RIGHT TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING AGAINST GRUBHUB, WHETHER NOW PENDING OR FILED IN THE FUTURE."

- **Page 15, § XXIII(II).** "You and Grubhub agree that all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement or payments by or to Grubhub, or that in any way relate to your use of the Platform, the Materials, the Services and/or other content on the Platform, your relationship with Grubhub, or any other dispute with Grubhub, shall be submitted exclusively to binding arbitration.  This includes claims that arose, were asserted, or involve facts occurring before the existence of this or any prior Agreement as well as claims that may arise after the termination of this Agreement.  [¶] Notwithstanding the foregoing, issues related to the scope, validity, and enforceability of this Arbitration Agreement are for a court to decide."

- **Pages 15-16, § XXIII(III).** "YOU ACKNOWLEDGE AND AGREE THAT, TO THE MAXIMUM EXTENT ALLOWED BY LAW, EXCEPT AS SET OUT IN SECTION VII BELOW, THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY DISPUTE TO BE ARBITRATED ON A CLASS, JOINT, COLLECTIVE OR CONSOLIDATED BASIS OR IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS CLAIMS

AS A PRIVATE ATTORNEY GENERAL OR FOR PUBLIC INJUNCTIVE RELIEF).  UNLESS BOTH YOU AND GRUBHUB OTHERWISE AGREE IN WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS (EXCEPT AS SET OUT IN SECTION VII BELOW), AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS, JOINT, COLLECTIVE OR REPRESENTATIVE PROCEEDING.  THE ARBITRATOR MAY AWARD RELIEF (INCLUDING ANY DECLARATORY OR INJUNCTIVE RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO RESOLVE AN INDIVIDUAL PARTY'S CLAIM.  THE ARBITRATOR MAY NOT AWARD RELIEF FOR OR AGAINST ANYONE WHO IS NOT A PARTY TO THE PROCEEDING.  [¶] This Class Action and Collective Relief Waiver is an essential part of this 'Dispute Resolution' section, and if it is deemed invalid or unenforceable with respect to a particular claim or dispute, neither you nor Grubhub is entitled to arbitration of such claim or dispute.  Notwithstanding the foregoing, if a court determines that the Class Action and Collective Relief Waiver is not enforceable as to a particular claim or request for relief and all appeals from that decision have been exhausted (or the decision is otherwise final), then the parties agree that that particular claim or request for relief may proceed in court but shall be severed and stayed pending arbitration of the remaining claims."

## II.  DISCUSSION

A.  Legal Standard

Grubhub contends that the Federal Arbitration Act ("FAA") governs the instant case, and Mr. Stout does not argue to the contrary.  Under the FAA, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The final clause of § 2, its saving clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their

meaning from the fact that an agreement to arbitrate is at issue." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015) (internal quotation marks omitted).

B.   *McGill* Rule and Public Injunctive Relief

In the instant case, Mr. Stout's FAC suggested that he would challenge the arbitration agreement on the basis that he never agreed to the Terms of Use (*i.e.*, no contract formation). *See, e.g.*, FAC ¶ 39 (alleging that, "[w]hen signing up for Grubhub, consumers never agree to Grubhub's Terms of Service or any arbitration clause therein"). However, in his opposition brief, Mr. Stout does not make this argument and instead simply asserts that the Terms of Use "are unenforceable to the extent they attempt to prohibit users from seeking public injunctive relief in any forum, in violation of the California Supreme Court's holding in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2007)." FAC ¶ 41; *see also* Opp'n at 3 (arguing that "Mr. Stout's claims are not subject to arbitration because Grubhub's Terms of Use are unenforceable under *McGill*").

In *McGill*, a customer of a credit card company, Citibank, purchased a "credit protector" plan from the company. "Under the Plan, Citibank agreed to defer or to credit certain amounts on McGill's credit card account when a qualifying event occurred, such as long-term disability, unemployment, divorce, military service, or hospitalization. Citibank charged a monthly premium for the Plan . . . ." *McGill*, 2 Cal. 5th at 952. The plaintiff brought a class action against Citibank based on Citibank's marketing of the credit protector plan and the handling of a claim she made under it after she lost her job. She brought claims under, *inter alia*, § 17200, the CLRA, and § 17500. Part of the relief sought was an injunction prohibiting the company from continuing to engage in its allegedly illegal and deceptive practices.

The plaintiff's account agreement with Citibank contained an arbitration agreement. The California Supreme Court addressed the validity of a provision in the arbitration agreement that waived the right to seek, in any forum, public injunctive relief as provided for by statute (*e.g.*, § 17200 and the Consumer Legal Remedies Act). Public injunctive relief was defined as "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 951; *see also id.* at 955 (noting that "private injunctive relief [is] relief that primarily 'resolve[s] a private and 'rectif[ies] individual wrongs'

and that benefits the public, if at all, only incidentally" while "public injunctive relief [is] relief that 'by and large' benefits the general public and that benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public'").  The Court noted that the plaintiff in the case did, in fact, seek public injunctive relief because

> [t]he UCL claim alleges in part that Citibank's "advertising and marketing" of the Plan "is unfair, deceptive, untrue and misleading" in various respects, and that Citibank "continue[s] to violate" the UCL by selling the Plan "with advertising that includes false, misleading or deceptive information, and material omissions."  For relief, it asks, among other things, for an order requiring Citibank "to immediately cease such acts of unfair competition and enjoining [Citibank] from continuing to conduct business via the unlawful, fraudulent or unfair business acts and practices complained of herein and from failing to fully disclose the true nature of its misrepresentations."

*Id.* at 956-57.

The California Supreme Court found such the provision invalid and unenforceable

> insofar as it purports to waive McGill's statutory right to seek [public injunctive] relief.  Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement."  Consistent with this provision, we have explained that "a party may waive a statutory provision if a statute does not prohibit doing so, the statute's 'public benefit … is merely incidental to [its] primary purpose' [citation], and 'waiver does not seriously compromise any public purpose that [the statute was] intended to serve' [citation]."  By definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law, as discussed in *Broughton* and *Cruz*, is primarily "for the benefit of the general public."  Its "evident purpose," the court said in *Broughton*, is "to remedy a public wrong," "not to resolve a private dispute," and any benefit to the plaintiff requesting such relief "likely … would be incidental to the general public benefit of enjoining such a practice."  Accordingly, the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve.  Thus, insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law.

*Id.* at 961.

In *McGill*, the California Supreme Court went on to find that "a California rule precluding enforcement of the waiver would [not] be preempted by the FAA," *id.*, and, in *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), the Ninth Circuit agreed: "The *McGill* rule . . . is a

7

generally applicable contract defense" and "applies 'equally to arbitration and non-arbitration agreements.'" *Id.* at 827. In other words, "the *McGill* rule expresses no preference as to whether public injunction claims are litigated or arbitrated, it merely prohibits the waiver of the right to pursue those claims *in any forum*." *Id.* (emphasis added). In addition, the *McGill* rule "does not 'deprive parties of the benefits of arbitration." *Id.* at 828. "A major concern in *Concepcion* was that compelling classwide arbitration 'requires procedural formality,' and, in so doing, 'makes the process slower, more costly, and more likely to generate procedural morass than final judgment.' By contrast, neither state law nor constitutional due process gives rise to, let alone 'requires[,] procedural formality' in the arbitration of public injunctive relief." *Id.* The Ninth Circuit added that, although "arbitration of a public injunction will in some cases be more complex than arbitration of a conventional individual action or a representative PAGA claim," "the complexity involved in resolving a request for a public injunction 'flows from the substance of the claim itself, rather than any procedures required to adjudicate it (as with class actions).'" *Id.* at 829.

In the instant case, Grubhub does not dispute that its Terms of Use bar suits in court and also prohibit an arbitrator from granting public injunctive relief. In effect, this means that a person bringing a statutory claim such as a § 17200 claim could not obtain public injunctive relief in *any* forum. Thus, Grubhub does not dispute that the *McGill* rule is potentially at issue in the case at bar.

Grubhub argues, however, that the *McGill* rule is not applicable in the instant case because, even though Mr. Stout has asked for injunctive relief in his FAC, it is not *public* injunctive relief but rather *private*. In support, it cites a recent Ninth Circuit opinion *Hodges v. Comcast Cable Communications, LLC*, 12 F.4th 1108 (9th Cir. 2021).[3]

In *Hodges*, the plaintiff was a customer of Comcast. He filed a class action against the company, "alleging that Comcast violated class members' statutory privacy rights in collecting

---

[3] In *Hodges*, the Ninth Circuit rejected the argument that "the mere *presence* of a requirement to arbitrate public injunctive relief in a contract should [be] enough to invalidate [an] arbitration provision." *Hodges*, 12 F.4th at 1113 (emphasis in original; adding that precedent "forecloses Hodges' argument that courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute.).

8

'data about subscribers' cable television viewing activity' as well as 'personally identifiable demographic data about its subscribers.'" *Id.* at 1111. Included among the relief sought was injunctive relief which the plaintiff claimed was "public" in nature.

The Ninth Circuit stated that, in *McGill*, the California Supreme Court "emphasized three key features" with respect to public injunctive relief. *Id.* at 1114.

> First, the Court stated that public injunctive relief "has 'the primary purpose and effect of' *prohibiting* unlawful acts that threaten *future* injury to the general public." Thus, in contrast to relief aimed at "redressing or preventing injury" to a person or group of persons, forward-looking relief that generally aims to prevent unlawful conduct in the future is more likely to be characterized as reflecting statutory rights that are "established for a public reason."
>
> Second, the *McGill* court emphasized that a request for public injunctive relief "does not constitute the pursuit of representative claims or relief on behalf of others," nor does it involve "prosecut[ing] actions on behalf of the general public." . . . [T]he requirement that an "'action be brought as a class action'" has "never been imposed with regard to requests to enjoin future wrongful business practices that will injure the public."
>
> Third, the court relatedly drew a sharp distinction with respect to ascertainability between the beneficiaries of private and public injunctive relief. The court explained that, in contrast to private injunctive relief, which provides benefits "to an individual plaintiff – or to a g*roup of individuals similarly situated* to the plaintiff," public injunctive relief involves diffuse benefits to the "general public" as a whole, and the general public "'fails to meet'" the class-action requirement of "'an ascertainable class.'"

*Id.* at 1114-15 (emphasis in original).

The Ninth Circuit thus summarized public injunctive relief as "forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party." *Id.* at 1115. Of note for the instant case, the Ninth Circuit emphasized that prospective injunctive relief – *i.e.*, forward looking – is still not public injunctive relief "when the primary beneficiaries [are] a defined group of similarly situated persons, rather than the general public." *Id.* at 1115-16. For instance, the court noted that in a prior decision, the only potential beneficiaries of the requested forward-looking relief were the defendant's current employees and not the public at large, and thus such an injunction would not be public. *See id.* at

9

1115-16. The court also pointed out that

> *[t]he paradigmatic example [of public injunctive relief]* would be the sort of injunctive relief sought in *McGill* itself, where the plaintiff sought an injunction *against the use of false advertising* to promote a credit protection plan. Such an injunction attempts to stop future violations of law that are aimed at the general public, and imposing or administering such an injunction does not require effectively fashioning individualized relief for non-parties.

*Id.* at 1115 (emphasis added); *McGill*, 2 Cal. 5th at 956-57 (stating that "McGill's complaint does, in fact, appear to seek the type of public injunctive relief that *Broughton* and *Cruz* identified" – *e.g.*, "[t]he UCL claim alleges in part that Citibank's 'advertising and marketing' of the Plan 'is unfair, deceptive, untrue and misleading' in various respects"). Finally, the Ninth Circuit noted that,

> any broader conception of public injunctive relief, beyond what we have set forth above, would have required a different conclusion as to the preemption issue. If California's *McGill* rule had sought to preserve, as non-waivable, the right to formally represent the claims of others, to seek retrospective relief for a particular class of persons, or to request relief that requires consideration of the individualized claims of non-parties, then such a rule would plainly "interfere with the informal, bilateral nature of traditional consumer arbitration."

*Hodges*, 12 F.4th at 1116.

Under these parameters, the Ninth Circuit concluded that the plaintiff in *Hodges* was not seeking *public* injunctive relief because he sought relief for cable subscribers of Comcast only – *e.g.*, asking for an order enjoining Comcast from collecting cable subscribers' personally identifiable video activity data for advertising purposes without their prior written or electronic consent. *See id.* at 1120-21. "[The] requests [for relief] on their face stand to benefit only Comcast 'cable subscribers' – *i.e.*, by definition they will only benefit a 'group of individuals similarly situated to the plaintiff.'" *Id.* at 1121. Therefore, the relief could not be "said to *primarily* benefit the general public as a more diffuse whole." *Id.* (emphasis in original).

> Moreover, it is apparent that administering any injunctive relief of the sort sought here would entail the consideration of the individualized claims of numerous cable subscribers. The relief sought here is not the equivalent of a simple prohibition on running a false advertisement or a mandatory injunction to obtain certain licenses or to make additional public disclosures in advertising. On the contrary, each form of relief would require either consideration

10

> of which particular consents each subscriber has or has not given or examination of which individualized disclosures have or have not been made. Administering an injunction of this sort, on this scale, is patently incompatible with the procedural simplicity envisioned by bilateral arbitration.

*Id.*; *see also Cottrell v. AT&T Inc.*, No. 20-16162, 2021 U.S. App. LEXIS 32093, at *3 (9th Cir. Oct. 26 2021) (finding that plaintiff's requested relief "suffers from the same flaw" as in *Hodges* – "for AT&T to create an unauthorized account [for DIRECTV services] and violate California law, the victimized individual must first transact in some way with AT&T [– *i.e.*,] must become a customer," and "[t]he benefit of Cottrell's requested relief therefore would not primarily accrue to the general public[;] [r]ather, the beneficiaries of the injunction would be current and future AT&T customers – a group of individuals similarly situated to Cottrell").

Mr. Stout suggests that *Hodges* should not be given undue weight given earlier Ninth Circuit precedent which weighs in his favor, *Snarr v. HRB Tax Grp., Inc.*, 839 Fed. Appx. 53 (9th Cir. 2020). But *Snarr* is an unpublished decision and, in any event, is not in tension with *Hodges*. The plaintiff in *Snarr* alleged that the defendant violated, *inter alia*, § 17500 through its "marketing and operating of its publicly-accessible tax-filing webpages. [The plaintiff sought] to generally enjoin future violations of those statutes, in addition to describing specific terms for injunctive relief to remedy HRB's allegedly misleading web services and advertising." *Id.* at 55. The Ninth Circuit rejected the defendant's contention that the injunctive relief sought was private in nature because

> it benefits only a group similarly situated to the Plaintiff, specifically those who both use HRB's web services and are eligible for its IRS-affiliated free file service. No California authority supports construing the beneficiaries of this type of injunctive relief so narrowly. In *McGill*, for example, the California Supreme Court concluded that enjoining deceptive marketing under these statutes was public, rather than benefitting only a group of people who use that bank's services. *McGill*, 393 P.3d at 91; *see also Mejia v. DACM Inc.*, 54 Cal. App. 5th 691 (2020) (rejecting as "illogic[al]" the argument that requiring a defendant to give disclosure forms when selling vehicles would benefit only "the class of similarly situated individuals who . . . would buy a motorcycle from [the defendant]" under the same type of contract). Nor do the eligibility requirements for the IRS-affiliated free-filing service – whether publicly published or not – change the public nature of the relief, just as the eligibility requirements that were likely required for the credit card account in *McGill* did not. *McGill*, 393 P.3d at 91; *see*

11

>*also Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1258-59 (N.D. Cal. 2019) (explaining why relief benefitting a subset of the public is still public injunctive relief).

*Id.*[4] Thus, the fact that only certain subset of the public would ultimately benefit from the injunction does not negate the public nature of the injunction sought, and *Hodges* did not hold otherwise.

In the instant case, the question is whether Mr. Stout is seeking public or private injunctive relief. As noted above, the FAC reflects that Mr. Stout is seeking two different kinds of injunctive relief: (1) an order enjoining Grubhub from charging the CA Driver Benefits Fee on Grubhub+ subscribers, *see* FAC ¶¶ 62, 70; and (2) an order enjoining Grubhub "from continuing to engage, use, or employ [its] practice of misrepresenting [its] delivery fees." FAC ¶ 77. Under *Hodges*, the first kind of injunctive relief is not public injunctive relief because it is primarily designed to benefit Grubhub+ subscribers only, even if the public may incidentally benefit. However, the second kind of injunctive relief is properly considered public injunctive relief; the relief sought is a prohibition of false advertising which affects not just existing Grubhub customers but the broader public. As noted above, *Hodges* noted that the paradigmatic example of public injunctive relief is an injunction against the use of false advertising, particularly where, as here, the advertising is directed towards the general public. Anyone in the public can subscribe to Grubhub and/or Grubhub+.

At the hearing, both parties challenged the Court's analysis above. Mr. Stout, for example, argued that the Court should not separate out the different kinds of injunctive relief requested. According to Mr. Stout, the entire point of bringing the lawsuit was to address false advertising, which is a detriment to the public. He contends that there are two ways to cure that false advertising – (1) changing the advertising so that it no longer claims there is unlimited free delivery *or* (2) stopping the practice of charging the CA Driver Benefits Fee which would make

---

[4] Mr. Stout's reliance on two state court decisions, *Mejia v. DACM Inc.*, 54 Cal. App. 5th 691 (2020), and *Maldanado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710 (2021), is misplaced. The Ninth Circuit in *Hodges* rejected those cases. *See Hodges*, 2021 U.S. App. LEXIS 27268, at *20-27 (stating, *inter alia*, that "we do not think [*Mejia*] would be followed by the California Supreme Court" because it "patent[ly]" misread California law; adding that, "[t]o the extent that *Maldonado* follows and applies *Mejia*'s flawed analysis, it is equally mistaken.).

1   the current advertising of unlimited free delivery truthful – does not alter the fact that the
2   underlying misconduct of Grubhub is the false advertising.

3   But the fact that the alleged underlying misconduct concerns false advertising does not
4   mean that any requested injunctive relief affecting the accuracy of that advertising is automatically
5   deemed public in nature. *McGill* and *Hodges* instruct that a court should consider who primarily
6   benefits from the injunctive relief requested and who is only incidentally benefited.[5] *See*, *McGill*,
7   2 Cal. 5th at 955 ("public injunctive relief under the UCL, the CLRA, and the false advertising
8   law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten
9   future injury to the general public" but "[r]elief that has the primary purpose or effect of redressing
10  or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the
11  plaintiff – does not constitute public injunctive relief"). Eliminating the CA Drive Benefits Fee
12  would most directly and primarily benefit current Grubhub+ subscribers and only incidentally
13  affect the accuracy of the advertisements.

14  In turn, Grubhub argued that the Court should disregard Mr. Stout's public injunctive relief
15  request because, if the requested private injunctive relief were obtained (*i.e.*, Grubhub were
16  prohibited from charging the CA Driver Benefits Fee), the request for public injunctive relief
17  would be moot (*i.e.*, because the advertising of unlimited free delivery would no longer be false).
18  Grubhub emphasized that the true relief sought by Mr. Stout was the private injunctive relief, not
19  the public, because he did not want to be charged the CA Driver Benefits Fee at all. But under
20  *McGill*, the court does not look at the primary subjective purpose of the plaintiff in bringing suit;
21  instead, it looks at the "primary purpose and effect" of the particular *relief* sought. *McGill*, 2

---

[5] To the extent Mr. Stout relies on *In re Stubhub Refund Litigation*, No. 20-md-02951-HSG, 2021 U.S. Dist. LEXIS 225104 (N.D. Cal. Nov. 22, 2021), the Court acknowledges that the case does provide some support for his position. *See id.* at *34 (stating that, "[a]lthough some of the relief Plaintiffs seek may only benefit Plaintiffs or Stubhub customers who have purchased tickets through Stubhub [*e.g.*, an injunction requiring Stubhub to honor its refund policy and to preclude Stubhub from unilaterally changing the terms of the guarantee], the Court finds that Plaintiffs are also seeking this 'paradigmatic example' of public injunctive relief, to preclude Defendant from misrepresenting to the general public the protections afforded by its FanProtectTM Guarantee"; ultimately denying the motion to compel arbitration for the CLRA, UCL, and false advertising claims). But the case is not dispositive particularly because there was no discussion in the case of the issue of severance on which the outcome of this motion turns. *See infra.*

1   Cal.5th at 951. Grubhub's argument also ignores the right of the plaintiff to plead in the alternative.
2   *Cf.* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense
3   alternatively or hypothetically, either in a single count or defense or in separate ones. If a party
4   makes alternative statements, the pleading is sufficient if any one of them is sufficient."). That
5   right is apt here where it is possible that Mr. Stout ultimately may not be able to successfully
6   pursue his claims under § 17200 and the CLRA and the relief sought for Grubhub+ subscribers,
7   *but* may still prevail on his claim under § 17500 (which may lie, *e.g.*, for negligent
8   misrepresentation) for which he seeks relief for the public. For instance, as indicated at the
9   hearing, Mr. Stout may lack standing to pursue the former since he is no longer a Grubhub+
10  subscriber.

11  Grubhub protests still that the public injunctive relief should still be deemed private in
12  nature because "[o]nly consumers with Grubhub accounts may purchase a Grubhub+ membership
13  and not all Grubhub account holders have Grubhub+ memberships." Mot. at 13; *see also* Koreis
14  Decl. ¶ 17 (testifying that "[a] consumer must create a Grubhub account before purchasing a
15  Grubhub+ subscription[;] [o]f the Grubhub users in California who placed at least one order on
16  Grubhub in the last year, less than 5% had purchased a Grubhub+ subscription"). But there is no
17  indication that Grubhub+ is only *advertised* to existing Grubhub customers, as opposed to the
18  broader public. Nor is there any showing that one must first be a Grubhub customer before buying
19  a Grubhub+ subscription. From all appearances, any member of the public can simultaneously
20  become a Grubhub customer and a Grubhub+ subscriber.

21  Accordingly, the Court holds that Mr. Stout is seeking private injunctive relief in part *and*
22  public injunctive relief in part.

23  C.   <u>Severance</u>

24  Grubhub indicates that, should the Court find a request for both private and public
25  injunctive relief, then the proper thing to do is sever and arbitrate all claims and the request for
26  private relief while the request for public injunctive relief is stayed pending arbitration. The
27  December 2020 Terms of Use provides for severance:
28                  YOU ACKNOWLEDGE AND AGREE THAT, TO THE

14

> MAXIMUM EXTENT ALLOWED BY LAW, EXCEPT AS SET OUT IN SECTION VII BELOW, THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY DISPUTE TO BE ARBITRATED ON A CLASS, JOINT, COLLECTIVE OR CONSOLIDATED BASIS OR IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS CLAIMS AS A PRIVATE ATTORNEY GENERAL OR FOR PUBLIC INJUNCTIVE RELIEF).  UNLESS BOTH YOU AND GRUBHUB OTHERWISE AGREE IN WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS (EXCEPT AS SET OUT IN SECTION VII BELOW), AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS, JOINT, COLLECTIVE OR REPRESENTATIVE PROCEEDING.  THE ARBITRATOR MAY AWARD RELIEF (INCLUDING ANY DECLARATORY OR INJUNCTIVE RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO RESOLVE AN INDIVIDUAL PARTY'S CLAIM.  THE ARBITRATOR MAY NOT AWARD RELIEF FOR OR AGAINST ANYONE WHO IS NOT A PARTY TO THE PROCEEDING.
>
> This Class Action and Collective Relief Waiver is an essential part of this 'Dispute Resolution' section, and if it is deemed invalid or unenforceable with respect to a particular claim or dispute, neither you nor Grubhub is entitled to arbitration of such claim or dispute. **Notwithstanding the foregoing**, if a court determines that the Class Action and Collective Relief Waiver is not enforceable as to a particular claim **or** request for relief and all appeals from that decision have been exhausted (or the decision is otherwise final), then the parties agree that that particular claim **or** request for relief may proceed in court but shall be severed and stayed pending arbitration of the remaining claims."

Terms of Use § XXIII(III) (emphasis added).

Grubhub notes that *McGill* itself contemplated severance as a possibility.  *See McGill*, 2 Cal. 5th at 566 (noting that "piecemeal litigation of claims the parties have agreed to arbitrate and claims they have not agreed to arbitrate is consistent with the FAA" and that this principle has been extended to "piecemeal litigation of arbitrable and inarbitrable remedies derived from the same statutory claim") (internal quotation marks omitted).  Federal courts have likewise found the severance may include severance of either claims or types of relief sought.  *See, e.g.*, *Blair*, 928 F.3d at 831 (noting that parties are free to split decisionmaking between a court and an arbitrator – *e.g.*, an arbitrator decides liability first while a court decides later whether there is a public injunctive remedy); *Lag Host LLC v. Facebook, Inc.*, No. 21-cv-01495-JST, 2021 U.S. Dist. LEXIS 122542, at *17 (N.D. Cal. June 25, 2021) (holding that "the liability determination of whether Facebook violated the UCL should be made in arbitration, while the subsequent question

of whether Plaintiffs are entitled to public injunctive relief is a matter for judicial determination"); *Dornaus v. Best Buy Co., Inc.*, No. 18-cv-04085-PJH, 2019 U.S. Dist. LEXIS 24522, at *16 (N.D. Cal. Feb. 14, 2019) (noting that "the court shall retain jurisdiction over the adjudication of plaintiff's request for public injunctive relief, should defendant be found liable for the California statutory claims, which are brought on behalf of the public and for which public injunctive relief may be available").

Accordingly, the request for public injunctive relief may be severed from the claims, including the § 17500 claim underlying the request for public injunction. The Ninth Circuit's decision in *Blair* does not preclude this result. The language in Grubhub's Terms of Use makes a distinction between claims and requests for relief – allowing severance of a "claim or request for relief" – and therefore is distinguishable from the language used in the agreement in *Blair*. *See Blair*, 928 F.3d at 831 (rejecting defendant's argument that the court should sever liability from the remedy, with former being arbitrated and the latter being litigated; "Rent-A-Center reads 'claim for relief' in the severance clause to refer only to a particular remedy, not to the underlying claim" but this reading was unnatural and unpersuasive'"). The *Stubhub* case on which Mr. Stout relies also is distinguishable from the instant case as it has language similar to that in *Blair*. *See Stubhub*, 2021 U.S. Dist. LEXIS 225104, at *30-31 (referring to severing of a "claim").

In response, Mr. Stout still contends that there should not be severance because there is a "poison pill" in the Terms of Use – *i.e.*, a provision stating that, if one portion of the arbitration agreement is unenforceable, then the entirety of the arbitration agreement is unenforceable. Mr. Stout points to the following language: "This Class Action and Collective Relief Waiver is an essential part of this 'Dispute Resolution' section, and if it is deemed invalid or unenforceable with respect to a particular claim or dispute, neither you nor Grubhub is entitled to arbitration of such claim or dispute." Terms of Use § XXIII(III). The problem for Mr. Stout is that *immediately* following that language is the following:

> **Notwithstanding the foregoing**, if a court determines that the Class Action and Collective Relief Waiver is not enforceable as to a particular claim **or** request for relief and all appeals from that decision have been exhausted (or the decision is otherwise final), then the parties agree that that particular claim **or** request for relief

16

>>may proceed in court but shall be severed and stayed pending arbitration of the remaining claims.

Terms of Use § XXIII(III) (emphasis added). This language makes clear that there is no complete poison pill in the Terms of Use. Notably, in *Dornaus*, Judge Hamilton also rejected the plaintiffs' contention that the relevant agreement contained a "poison pill" when the agreement actually contained the following section titled "Survival and Severability of Terms":

>"If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us."

*Id.* at *15. *Compare, e.g.*, *McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 U.S. Dist. LEXIS 162751, at *3, 14-15 (N.D. Cal. Oct. 2, 2017) (concluding there was a poison pill because a provision in the relevant agreement specified that, if a "'specific provision'" related to a waiver "'is found to be unenforceable, *then the entirety of this arbitration provision shall be null and void*'"; "[t]he contract as actually written declares the entire arbitration provision null and void because the waiver of public injunctive relief is unenforceable") (emphasis added).

### III. CONCLUSION

For the foregoing reasons, the motion to compel arbitration is granted in part and denied in part. The underlying claims and the request for private injunctive relief (*i.e.*, for Grubhub+ subscribers) shall be arbitrated.[6] The request for public injunctive relief (*i.e.*, no false advertising to the general public) shall remain in this Court. However, litigation of the claim for public

///
///
///
///
///

---

[6] The Court leaves for the arbitrator to decide whether Mr. Stout has standing to seek private injunctive relief given that he no longer subscribes to the Grubhub+ service. *See* FAC ¶ 45 (alleging that Mr. Stout canceled the service "after discovering Grubhub failed to honor its promise to provide 'Unlimited Free Delivery'").

17

injunctive relief shall be stayed so that arbitration of all the substantive claims (including liability on the Section 17500 claim) and the request for private injunctive relief can proceed first.

This order disposes of Docket No. 28.

**IT IS SO ORDERED**.

Dated: December 3, 2021

_____
EDWARD M. CHEN
United States District Judge